UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACK THOMAS, individually and
on behalf of a class,

    Plaintiff,

v.

ASSET ACCEPTANCE, LLC,

    Defendant.

No. 12 C 7360

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jack Thomas filed a putative class action against defendant Asset Acceptance, LLC ("Asset"), alleging that Asset violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, by submitting an allegedly false affidavit in Illinois state court in the course of attempting to collect a debt from Thomas. R. 37. Asset has moved to compel arbitration and stay proceedings pending the completion of arbitration. R. 50. Asset's motion is denied.

**Background**[1]

Thomas opened a MasterCard account with Citibank on March 1, 1999. R. 56 ¶ 3. Thomas incurred charges on the account, and last made a payment on the account in August 2008. R. 51-1 ¶ 7. Citibank "charged off" the account in February 2009 with a balance outstanding. *Id.*

---

[1] The facts reviewed here are taken from the declarations Asset has submitted on this motion.

Asset contends that the agreement governing the account includes an arbitration provision. The copy of the arbitration provision that Asset attaches to its motion references a "Fact Sheet" that "shows whether [the] account is subject to arbitration." R. 51-2 at 11. Asset has not produced a "fact sheet." Asset has also produced a declaration from a Citibank employee attaching a statement of Thomas's account dated October 2001 that notified Thomas that Citibank was amending the agreement governing the account to include the arbitration provision. R. 56-1 at 9. The arbitration provision provides that "[a]ll claims relating to [the] account . . . are subject to arbitration," and that claims made by a "predecessor or successor" or "assignee" to the original parties are covered by the arbitration provision. R. 56-1 at 2-3.

On March 28, 2011, Citibank sold the account to an entity called Sherman Originator III LLC ("Sherman III"). R. 51-3 ¶ 3; *id.* Ex. B-1 at 6). Asset alleges that the account was subsequently sold or assigned a number of times before Asset acquired the account from an entity called Sherman Acquisitions on May 31, 2011. R. 51-3 ¶¶ 3, 6; *id.* Ex. B-3. Specifically, Asset alleges that it acquired the account at the end of the following chain of transfers, *see* R. 51-3 ¶¶ 3, 6:

(1) From Citibank to Sherman III;

(2) From Sherman III to Sherman Originator LLC;

(3) From Sherman Originator to LVNV Funding LLC ("LVNV");

(4) From LVNV to Sherman Acquisitions; and

(5) From Sherman Acquisitions to Asset.

2

Asset submits the following evidence in support of each transfer, respectively:

(1) Declaration of Meghan Emmerich, dated April 30, 2013 ("Emmerich Declaration"), attaching a Bill of Sale and an excel sheet abstract listing Thomas's account as included in the transfer, R. 51-3; *id.* Ex. B-1 at 6; *id.* Ex. B-2;

(2) Emmerich Declaration attaching a "Declaration of Account Transfer," R. 51-3, Ex. B-1 at 7;

(3) Emmerich Declaration attaching a "Declaration of Account Transfer," R. 51-3, Ex. B-1 at 7;

(4) Emmerich Declaration attaching a Bill of Sale and an excel sheet abstract listing Thomas's account as included in the transfer, R. 51-3, Ex. B-1 at 9; *id.* Ex. B-2;

(5) Emmerich Declaration attaching a Bill of Sale and an excel sheet abstract listing Thomas's account as included in the transfer, R. 51-3, Ex. B-3; *id.* Ex. B-2, and Declaration of Kenneth Proctor, dated May 2, 2013, attaching Bill of Sale, R. 51-1 ¶ 3; *id.* Ex. A-1.

Thomas contends that the evidence Asset has submitted is insufficient to show that the account is governed by the arbitration provision, and that Asset owns the account. Thomas also argues that Asset waived the right to arbitrate this dispute.

## Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the enforceability of arbitration clauses in state and federal courts. *See Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

Motions to compel arbitration are reviewed under a summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The "opposing party must demonstrate that a genuine issue of material fact . . . exists." *Id.* "[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* The court may consider evidence outside the pleadings, because a motion to compel arbitration is treated as an assertion that the court lacks subject matter jurisdiction. *See, e.g., Webb v. Midland Credit Mgmt., Inc.*, 2012 WL 2022013, at *2 (N.D. Ill. May 31, 2012); *Reineke v. Circuit City Stores, Inc.*, 2004 WL 442639, at *1 (N.D. Ill. Mar. 8, 2004).

## Discussion

### A. The Arbitration Provision

Thomas contends that "there is no way of knowing whether plaintiff's account is subject to arbitration," because the copy of the arbitration provision Asset attached to its motion states that the "Fact Sheet shows whether [the] account is subject to arbitration," but Asset did not produce a "Fact Sheet." R. 52 at 3. After Thomas filed his responding brief, Asset, with the Court's permission (granted at a status hearing on July 10, 2013), filed a declaration of a Citibank employee attaching a statement of Thomas's account from October 2001. *See* R. 56 (Declaration of Elizabeth S. Barnette, dated July 26, 2013). The October 2001 statement notified Thomas that the arbitration provision was being added to the agreement governing his account, and included a copy of the arbitration provision. R. 56-1 at 9. This document is sufficient to demonstrate that Thomas's account is subject to the arbitration provision.

### B. Waiver

Thomas also contends that Asset has "waived its right to arbitrate plaintiff's claims by actively litigating this case." R. 52 at 3. Courts generally invoke implicit waiver of a contractual right to arbitration only to prevent "parties [from] forum shop[ing], [*i.e.*,] taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002). Here, Asset's motion to compel arbitration was not motivated by an adverse ruling from the Court, but by new allegations of "robo-

5

signing" in Thomas's amended complaint. *See* R. 54 at 5-6. The eight months between the filing of the initial complaint and Asset's filing of this motion has not caused significant prejudice to Thomas. And Asset filed this motion less than four months after Thomas filed the first amended complaint. The parties have engaged in minimal discovery, and Asset's filing a motion to dismiss does not constitute substantial participation in the litigation. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008). Thus, Asset has not waived the right to arbitrate.

**C.  Chain of Title**

Thomas argues that the evidence Asset relies on to demonstrate that it owns his account suffers from a "clear break in the chain of title," R. 52 at 8, and, thus, Asset cannot enforce the arbitration provision. Asset responds that Thomas "fails to offer any evidence to show that the Sherman Companies did not purchase his account from Citibank and sell it to Asset or that anyone besides Asset owns his account." R. 54 at 11. Asset's response reverses the burden it must carry to be successful on its motion.

The evidence Asset has produced is insufficient to establish chain of title and Asset's ownership of the account. Asset has submitted authenticated bills of sale for the transfers from Citibank to Sherman III, from LVNV to Sherman Acquisitions, and from Sherman Acquisitions to Asset. But the only evidence that Asset has produced with regard to the transfers of accounts to and from Sherman Originator and to LVNV is an undated and unsworn "Declaration of Account Transfer." *See* R.

6

51-3, Ex. B-1 at 7. The "Declaration of Account Transfer" is attached as an exhibit to the declaration of Meghan Emmerich, who is a paralegal servicing the accounts of the "Sherman Companies." R. 51-3 ¶ 1. Emmerich includes only Sherman Acquisitions and Sherman III in her definition of the "Sherman Companies." *Id.* She does not include Sherman Originator or LVNV in the Sherman Companies," thus, she cannot authenticate documents allegedly created by Sherman Originator and LVNV. *See, e.g., Webb*, 2012 WL 2022013, at *3-4 (rejecting documents not created by the declarant's company on a motion to compel arbitration of a dispute over a credit card agreement). Emmerich also does not state that the "Declaration of Account Transfer" is a true and correct document or that it was kept in the regular course of business, as is required by Federal Rule of Evidence 803(6)(B). Rather, Emmerich makes only the bare assertion that the transfers to and from Sherman Originator and to LVNV took place, R. 51-3 ¶ 3, without asserting that this "information [was] transmitted by someone with knowledge" of the transfers. *See* Fed. R. Evid. 803(6)(A). Thus, Asset has not produced competent evidence to establish a completed chain of title to Thomas's account from Citibank to Asset.

Asset points to the fact that it has produced authenticated bills of sale showing transfers from Citibank to Sherman III, and from Sherman Acquisitions to Asset. Asset argues that these documents demonstrate that Citibank transferred Thomas's account to the "Sherman Companies" and that the "Sherman Companies" transferred Thomas's account to Asset. R. 54 at 10-11. But, as the Court just explained, Emmerich does not include Sherman Originator or LVNV in her

7

definition of the "Sherman Companies." The transfers to and from Sherman Originator and to LVNV must be proven in order to establish Asset's ownership of the account. Asset's contention that it has produced sufficient evidence to demonstrate that the account was transferred from Citibank to Asset via the "Sherman Companies" is insufficient because Asset has not shown that Sherman Originator and LVNV are included in the "Sherman Companies."[2]

Asset's motion to compel arbitration is denied without prejudice. Asset has produced evidence to show that the account is governed by a written agreement to arbitrate. The arbitration provision is such that the current assignee/owner of Thomas's account can compel arbitration of a dispute such as this. *See* R. 56-1 at 2-3 ("[a]ll claims relating to [the] account . . . are subject to arbitration," and claims made by a "predecessor or successor" or "assignee" to the original parties are included). But Asset has not shown that Thomas's complaint is within the scope of the arbitration provision governing his account, because Asset has not shown that it owns Thomas's account, and, thus, that is a party to the arbitration provision. If

---

[2] Thomas also argues that Asset's evidence is insufficient by questioning the authenticity of the excel sheet abstract listing Thomas's account as one of the accounts transferred by the bills of sale. R. 52 at 12. Thomas's concern about the authenticity of the excel sheet abstract is unfounded because Emmerich states that the excel sheet abstract is the "true and correct data" the Sherman III received from Citibank. R. 51-3 ¶¶ 4-5.

Thomas also argues that the bills of sale did not actually transfer anything because they were "without recourse." R. 52 at 11. But the phrase "without recourse" is a description of the rights the transferee has against the transferor, and does not say anything about the substance of the rights transferred. Thomas's own example of an attempt to transfer the Michigan Avenue bridge demonstrates that the key question here is whether the transferor has a right to transfer certain property, not the extent to which the transferee can sue the transferor.

Asset discovers evidence to support its alleged ownership of the account, Asset may refile its motion to compel arbitration.

## Conclusion

For the reasons stated above, Asset's motion to dismiss, R. 50, is denied without prejudice. The status conference set for September 11, 2013 will remain, at which time the parties can inform the Court as to how they wish to proceed.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 27, 2013